IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STEVEN TAYLOR,<br><br>     Plaintiff,<br>v.<br><br>ST. LOUIS COMMUNITY COLLEGE, et al.,<br><br>     Defendants. | Case No.  4:18CV00272SNLJ |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT ST. LOUIS COMMUNITY COLLEGE'S MOTION TO DISMISS**

     Defendant, The Community College District of St. Louis, St. Louis County, Missouri, commonly referred to as St. Louis Community College, has moved this Court to dismiss Counts I, II, and VI of Plaintiff Steven Taylor's Complaint (Doc. No. 6), each for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 12.)  In response, Plaintiff has filed his memorandum in opposition.  (Doc. No. 23.)  In turn, St. Louis Community College now provides for the Court's consideration the following brief memorandum of law as its reply:

**Introduction**

     St. Louis Community College ("the College" or "STLCC") has argued that Counts I, II, and VI of Plaintiff Steven Taylor's Complaint should each be dismissed for failure to allege facts sufficient to state a claim to relief that is plausible on its face.  *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (discussing motion to dismiss standard).  The College has demonstrated that Count I fails to allege any violation of Plaintiff's First Amendment rights; that Count II fails to allege any violation of his

1

procedural or substantive due process rights and is redundant of Count I; and, that Count VI fails to allege facts which would support a finding of municipal liability under *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 692 (1978).

To survive a motion to dismiss, "a civil rights complaint must contain facts which state a claim as a matter of law and must not be conclusory." *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995). A plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims, rather than facts that are merely consistent with such a right. *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (internal quotation and citations omitted).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In support of any type of cause of action, a plaintiff is required to plead more than a mere "unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. This tenet is especially true in cases involving government entities given the potential application of immunity defenses. *Id.* at 685.

Plaintiff's response amounts to nothing more than his own conclusory objection to dismissal. Without any support in the law, Plaintiff merely concludes that his Complaint contains sufficient factual allegations to survive the motion to dismiss. As discussed, below, Plaintiff has not articulated, in his Complaint or in his response, any basis in law for his "unadorned, the-defendant-unlawfully-harmed-me accusations" and conclusory allegations to survive the College's Motion to Dismiss for failure to state a claim, pursuant to Rule 12(b)(6).

**DISCUSSION**

I.  **The Complaint fails to set forth any facts by which Count I can state a claim for plausible relief under the First Amendment and Count I should be dismissed.**

In Count I, Plaintiff asserts a First Amendment claim, pursuant to Section 1983, against the College and Defendants Gee and Caples.  The College has shown that any limitation of Plaintiff's free-speech rights was reasonable, viewpoint neutral, and served compelling, important government interests.  (*See* Doc. No. 13 at 8-1 (*citing, e.g.*, *Good News Club v. Milford Central Sch.*, 533 U.S. 98 (2001) *and Bowman v. White*, 444 F.3d 967, 976 (8th Cir.2006) (restriction in limited public forum "must only be reasonable and viewpoint neutral").)

In response, Plaintiff suggests that the claim in Count I is for an unlawful prior restraint.  Plaintiff argues that the applause limitation during the public speaker portion of the meeting was unconstitutional insofar as it was not viewpoint neutral.  (Doc. No. 23 at 8-10.)  Plaintiff offers no response to the College's argument that he has failed to state a claim in Count I for any unlawful restriction of Plaintiff's *own* speech, (as Count I may be reasonably understood to allege); to this point, Plaintiff seeks to excuse his disruption by claiming that he was merely "rising to a point of order."  (*See id.* at 10.)  Regardless, Plaintiff's claim in Count I should be dismissed upon its failure to allege facts sufficient to support a cause of action.

  A.  **The applause limitation alleged was no prior restraint of speech because it was reasonable, viewpoint neutral, and served important governmental interests.**

First, regarding the so-called "prior restraint," Plaintiff's allegations are that Defendant Gee, at the beginning of the meeting, advised the audience that "disruptive clapping would not be allowed nor tolerated".  (Doc. No. 6, ¶42.)  During the first hour

3

of the October 19, 2017, public Board of Trustees meeting (the "Board meeting"), various reports were provided by STLCC administrators that generated "polite" clapping and applause.  (Doc. No. 6, ¶43.)  Thereafter, the Board meeting "was open to public comment by citizens to address the board".  (Doc. No. 6, ¶44.)  After a faculty member appeared as the first speaker during the public comments portion, and after some duration of clapping and applause, Gee "admonished the audience that the clapping must stop."  (Doc. No. 6, ¶46.)  Accepting Plaintiff's allegations as true, they are insufficient to support any claim for a violation of the First Amendment.

The College readily acknowledges the First Amendment's disdain for viewpoint discrimination, but Plaintiff's simple recitation of this axiom fails to address the legal issue at hand.  As *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829–30 (1995) (cited by Plaintiff), explains, there is more to the legal inquiry than the mere expression of some general proposition:

> There is no question that the [school district], like the private owner of property, may legally preserve the property under its control for the use to which it is dedicated. . . .  The necessities of confining a forum to the limited and legitimate purposes for which it was created may justify the State in reserving it for certain groups or for the discussion of certain topics.  ...  Thus, in determining whether the State is acting to preserve the limits of the forum it has created so that the exclusion of a class of speech is legitimate, we have observed a distinction between, on the one hand, content discrimination, which may be permissible if it preserves the purposes of that limited forum, and, on the other hand, viewpoint discrimination, which is presumed impermissible when directed against speech otherwise within the forum's limitations."

*Id.* (internal citations and punctuation omitted).

In *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789 (1984) (cited by Plaintiff), the Supreme Court considered whether a local ordinance prohibiting the posting of signs on public property was in violation of the

4

First Amendment. *Id.* at 791. Finding the ordinance to be constitutionally lawful, the Court noted the "general principle that the First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others." *Id.* at 804 (citations omitted). Nevertheless, the Court found that this "general rule" had no application in the case:

> For there is not even a hint of bias or censorship in the City's enactment or enforcement of this ordinance. There is no claim that the ordinance was designed to suppress certain ideas that the City finds distasteful or that it has been applied to appellees because of the views that they express. The text of the ordinance is neutral—indeed it is silent—concerning any speaker's point of view, and the District Court's findings indicate that it has been applied to appellees and others in an evenhanded manner.

*Id.* Although *Taxpayers for Vincent* involved a public forum, (not a limited public forum as here, where the College has even more latitude), Justice Stevens reiterated that not all restrictions on speech are unconstitutional:

> [A] government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest."

*Id.* at 805 (citation omitted).

Here, as in *Taxpayers for Vincent*, the general rule has no application. As alleged in the Complaint, there is not even a hint of bias or censorship in the applause limitation at the Board meeting. There is no allegation that the applause limitation was designed to suppress any particular idea or viewpoint. The limitation applied to the entire Board meeting, and more importantly, to the entire public comment portion of the Board meeting. (*See* Doc. No. 6, ¶¶42, 45-46.)

5

Further, there is no allegation that Mr. Gee's reminder, following the first speaker during the public comment portion, was based upon any particular viewpoint, opinion, or content.  (*See id.*, ¶46.)  Nor is there any allegation that the limitation was implemented with any advance knowledge by the College or Mr. Gee of what viewpoint, opinion, or content the public speakers would express.  Although Plaintiff describes the limitation as "selective suppression," he acknowledges in his response what he alleges in his Complaint: the audience members were asked to refrain from disruptive clapping and applause for *all* of the public comment speakers, each of whom had "independent points of view."  (Doc. No. 23 at 8.)  There is no allegation that any more or less applause was allowed for any public speaker.

The Complaint simply contains no allegation that the applause limitation was applied based upon the content or viewpoint expressed by any of the public speakers. The applause limitation was, therefore, content and viewpoint neutral– in reality, and as alleged in the Complaint.  The College reserved time for "public comment" so that the public, students, and faculty members, could address any concerns to the Board.  (Doc. No. 6, ¶44.)  The applause limitation was silent as to any public speaker's point of view or ideas and was a reasonable limitation as a matter of law.  *See, e.g.*, *Wright v. Anthony*, 733 F.2d 575, 577 (8th Cir.1984) (time limitations on a citizen's right to speak at meetings serve significant governmental interests in conserving time and in ensuring that other citizens have an opportunity to speak and are not unreasonable).

### B. Plaintiff did not have a First Amendment right to speak out of turn, to disrupt the Board meeting by his verbal and physical interjections, or to make the alleged "point of order" during the designated public comment portion of the Board meeting.

While Plaintiff's Count I might be deemed to include a claim based upon prior restraint, its more obvious complaint is that Plaintiff's *own* speech was unlawfully curtailed when he interrupted the Board meeting to speak "in response to the inequality and unfairness that STLCC teachers and students had been experiencing by not being able to express opposition to defendant STLCC's administration." (*See* Doc. No. 6, ¶91; *see also, e.g., id.*, ¶¶89-94 ("Plaintiff Steve Taylor's speech…"), ¶100 ("But for the content of and viewpoint expressed in plaintiff Taylor's speech…").)  Nevertheless, Plaintiff's empty and conclusory response to the College's motion offers no authority upon which to sustain any First Amendment claim in Count I.

"When the State establishes a limited public forum, the State is not required to and does not allow persons to engage in every type of speech.  The State may be justified in reserving its forum for certain groups or for the discussion of certain topics."  *Good News Club v. Milford Central Sch.*, 533 U.S. 98, 106 (2001) (internal citations and quotation marks omitted).  In a limited designated public forum, such as alleged by Plaintiff, "[r]estrictions on speech not within the type of expression allowed in a limited public forum must only be reasonable and viewpoint neutral."  *Bowman v. White*, 444 F.3d 967, 976 (8th Cir.2006)

Although Plaintiff alleges that he "made his statement during the break between speakers" and that "no presentation was disrupted by his comments," (Doc. No 23 at 6 (*citing* Doc. No. 6, ¶50)), such allegations are of no consequence.  Plaintiff alleges "Gee ordered Plaintiff Taylor to leave the room while Plaintiff Taylor was making a point about the Board restricting free speech and then demanded that Plaintiff Taylor be removed from the meeting."  (Doc. No. 6, ¶51.)  Taking the allegations as true, Plaintiff was out of order and he disrupted the Board meeting.

7

As a matter of law, Plaintiff had no First Amendment right to speak out of turn, to disrupt the Board meeting, or to make an alleged "point of order" during the designated public comment portion of the Board meeting. As a matter of law, the College's restriction of Plaintiff's speech was reasonable, viewpoint neutral, and served the important governmental interests associated with an orderly, efficient, and productive meeting.

As a matter of law, Plaintiff has failed to allege any deprivation of his rights under the First Amendment. He has not alleged any unconstitutional prior restraint of speech, nor has he alleged that his own speech was unconstitutionally limited or restricted. For these reasons, and those discussed in the College's Memorandum of Law in Support of Its Motion to Dismiss, Plaintiff's Count I should be dismissed for failure to state a claim upon which relief may be granted.

**II.     Plaintiff's "due process" claim in Count II fails to state a claim to relief that is plausible on its face and, therefore, should be dismissed.**

In Count II, Plaintiff contends that the College violated his due process rights by selectively prohibiting members of the public from clapping, from expressing their opinions, and from otherwise speaking in response to a matter of public concern based on the viewpoint and content of their messages. (Doc. No. 6, ¶¶107-08.) Because no due process right held by Plaintiff is even implicated by his allegations, and because the claim is redundant to the First Amendment claim in Count I, Count II must be dismissed.

"The Due Process Clause of the Fourteenth Amendment prohibits state governments from depriving 'any person of life, liberty, or property, without due process of law....'" *Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir. 1999) (*citing* U.S. Const.

8

amend. XIV, § 1).  The Due Process Clause has both procedural due process and the substantive due process components.  *See id.* (*citing Cty. of Sacramento v. Lewis*, 523 U.S. 833 (1998)).  The starting point in analyzing a due process claim is to identify a protected interest to which due process would apply.  "Analysis of either a procedural or substantive due process claim must begin with an examination of the interest allegedly violated, and the possession of a protected life, liberty, or property interest is a condition precedent to any due process claim."  *Id.* (citations and internal punctuation omitted).  "Where no such interest exists, there can be no due process violation."  *Id.* (citations and internal punctuation omitted).

Plaintiff certainly has not directed the Court's attention to any allegation that implicates any due process right, nor has he presented any argument or authority to even suggest as much.  Cases cited by Plaintiff are of no significance here, offered for nothing more than the most general statements of the law.  Too, neither case cited by Plaintiff is on point:  in *Speiser v. Randall*, 357 U.S. 513 (1958), the Court considered the intersection of speech and a state's taxing program ("we hold that when the constitutional right to speak is sought to be deterred by a State's general taxing program due process demands that the speech be unencumbered until the State comes forward with sufficient proof to justify its inhibition"); in *Morrissey v. Brewer*, 408 U.S. 471 (1972), the Court addressed minimal due process requirements for parole revocation.  Neither case is pertinent to the issues before this Court.

Nothing in the Complaint or in the law establishes that any due process interest held by Plaintiff was infringed upon.  Plaintiff has not satisfied – and cannot satisfy – this condition precedent, which remains an "insuperable bar to relief."  *See Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008).

9

With no due process right at issue by the allegations of the Complaint, Plaintiff has failed to state a due process claim, as a matter of law.  Further, the claim in Count II is duplicative of that in Count I.  *See, e.g.*, *Weeks v. Corizon Med. Servs., Inc.*, No. 2:12-CV-70-RWS, 2013 WL 308871, at *4 (E.D. Mo. Jan. 25, 2013) (dismissing plaintiff's due process claim because his allegations made clear that his claim was covered by the First Amendment).  Count II fails to state any plausible due process claim under the Fourteenth Amendment and should be dismissed.

### III. Plaintiff's *Monell* claim in Count VI fails to set forth enough facts to state a claim for plausible relief and should be dismissed.

Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise.  *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013) (citing *Monell*, 436 U.S. at 690-91 *and City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).

Here, even a most generous reading of Plaintiff's Complaint leaves it insufficient to state any claim for municipal liability, notwithstanding Plaintiff's suggestions in response.  In the total absence of any relevant factual allegations, Plaintiff has embarked upon a proverbial fishing expedition, pleading three different theories for alleged municipal liability: (1) the College is liable for his removal from the meeting by Mr. Caples because the College delegated policy-making authority to Mr. Gee; (2) Plaintiff's rights were violated pursuant to "a custom"; and (3) the College failed to properly hire, train, or supervise Mr. Caples.  (*See* Doc. No. 6, Doc. No. 23 at 11-13.)  With no factual matter in any of the Complaint's one hundred and sixty-three paragraphs to support any

10

of these three guesses about municipal liability (*see id*, passim), Count VI is nothing short of pure conjecture and must be dismissed.

### A. Plaintiff has not alleged the existence of any municipal policy under *Monell*.

Municipal liability for an official policy attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action taken. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). Municipal liability must be established by evidence that a policy or custom was *the moving force* behind the alleged constitutional violation. *Mettler v. Witledge*, 165 F.3d 1197, 1204 (8th Cir. 1999) (citing *Monell* 436 U.S. at 694) (emphasis added).) Plaintiff has not made, and cannot make, the factual allegations required of this theory of municipal liability.

Plaintiff alleges nothing more than that his seizure and removal from the Board meeting were the (1) result of "a policy and custom of defendant STLCC and defendant Gee," (Doc. No. 6, ¶138), and (2) perpetrated "pursuant to an ordinance, policy, or custom of defendant STLCC and defendant Gee," (*id.*, ¶139). The foregoing conclusory allegations are Plaintiff's only allegations on these points. These dull allegations are insufficient on their face – mere labels and conclusions. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal punctuation and citations omitted).

Reaching well beyond the allegations contained in his Complaint, Plaintiff simply asserts in his response, and without support, that the Complaint's allegations "establish that Mr. Gee was the final decisionmaker for the Board of Trustees and thus for the St. Louis Community College District at the board meeting…" (*See* Doc. No. 23 at 12 (with

11

no citation to the Complaint).) Plaintiff cannot offer any legal authority for his unfounded conclusion, which, again, is *not even alleged the Complaint.*

These speculative conclusions in Plaintiff's response are not sufficient to establish that any action about which Plaintiff complains was ordered or undertaken by a decisionmaker possessing final authority to establish official policy for the College. Plaintiff's unsupported conclusions and legal conclusions should be ignored. *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) (the court may ignore sweeping unsupported conclusions and legal conclusions). Plaintiff's Complaint does not allege any facts to support any "policy" theory of liability and his response fails to cure this fatal deficiency.

### B. Plaintiff has not alleged the existence of any custom under *Monell*.

Plaintiff's Complaint uses the word, "custom," only four times, and without any explanation or adornment. (Doc. No. 6, ¶¶138, 139, 141, 142.) Plaintiff's response includes no argument that the constitutional deprivations of which he complains were the result of a custom or practice. The College addresses this theory only for the sake of completeness.

Governmental liability may also be established through proof that the alleged misconduct was so pervasive among the non-policy making employees of the entity as to constitute a "custom or practice" with the force of law. *McGautha v. Jackson Cnty., Mo., Collections Dep't*, 36 F.3d 53, 56 (8th Cir. 1994). A custom can be shown only by adducing evidence of a continuing, widespread, persistent pattern of unconstitutional misconduct. *Jenkins v. County of Hennepin, Minn.*, 557 F.3d 628, 634 (8th Cir. 2009).

Here, Plaintiff's bald recitation of the word, "custom," utterly fails to allege any facts capable of supporting this theory of municipal liability.  While Plaintiff may not be required to specifically identify or name the unofficial policy, custom, or practice, the Complaint does nothing more than use a term of art associated with this body of law. "At the very least, however, a plaintiff must allege *facts* which would support the existence of an unconstitutional policy or custom."  *Teague v. St. Charles Cnty.*, 708 F. Supp. 2d 935, 939-40 (E.D.Mo. 2010) (*citing Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004)) (emphasis added).  *Facts* which would support the existence of an unconstitutional policy or custom *are not the same as conclusory statements that merely proclaim* the existence of an unconstitutional policy or custom. "A plaintiff's failure to include any allegations, reference or language from which one could begin to draw an inference that the conduct complained of resulted from an unconstitutional policy or custom renders the complaint deficient." *Id.* (citations omitted).

Here, there is literally nothing in the Complaint upon which any claim for municipal liability against the College for an unconstitutional custom may lie.

### C. Plaintiff has not alleged any facts to support a *Monell* claim for failure to properly hire, train, supervise, or discipline Defendant Caples.

Finally, Plaintiff asserts the naked and conclusory allegation that the College "failed to properly hire, train, supervise, and discipline defendant Officer Caples on the requirements of the First and Fourth Amendments." (Doc. No. 6, ¶140.)  The words or phrase, "hire, train, supervise, and discipline," appears in only one other instance in the Complaint.  (*Id*, ¶142.)  Here, again, the Complaint does nothing more than "baldly assert these legal conclusions," if even that much, and this is inadequate to state a claim.

13

*See Twombly*, 550 U.S. at 555 (mere labels and conclusions are inadequate to state a claim).

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of §1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 131 S Ct. 1350, 1359 (2011) (citation omitted). To state a claim for municipal liability, the municipality's "failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.' Only then 'can such a shortcoming be properly thought of as a . . . policy or custom that is actionable under § 1983.'" *Id.* at 1359-60 (*quoting City of Canton,* 489 U.S. at 388). Therefore, "when . . . policymakers are on actual or constructive notice that a particular omission in their training program causes . . . employees to violate citizens' constitutional rights, the [municipality] may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.* at 1360.

As with his other theories of municipal liability, Plaintiff's Complaint includes only the barest conclusory recitation of the elements of a claim based upon a failure to hire, train, supervise or discipline Mr. Caples. Nothing in the Complaint or in Plaintiff's response can overcome the total absence of any fact capable of supporting this theory – or any other theory – of municipal liability against the College.

Additionally, Plaintiff has alleged no underlying constitutional violation, without which, there can be no municipal liability claim against the College on any theory available under *Monell.* "[I]ndividual liability first must be found on an underlying

14

substantive claim." *Brockinton v. City of Sherwood*, 503 F. 3d 667, 674 (8th Cir. 2007). "This circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005). There is no underlying individual liability, as shown by Defendants Gee and Caples in their own Motion to Dismiss and memoranda in support. For this reason, too, the Court must dismiss Plaintiff's claim against the College in Count VI.

Because Plaintiff cannot sustain any cause of action for municipal liability against the College, Count VI must be dismissed.

## Conclusion

For the foregoing reasons, along with the reasons set forth in the College's Memorandum of Law in support of this motion, Counts I, II, and VI of Plaintiff's Complaint – the only three claims against the College –must be dismissed for failing to state a claim upon which relief can be granted.

Respectfully submitted,

**KING, KREHBIEL, & HELLMICH, LLC**

_____
JASON S. RETTER #59683MO
RACHEL BATES #68696MO
2000 South Hanley Road
St. Louis, MO  63144-1524
Phone: 314-646-1110
Fax: 314-646-1122

and

**LEWIS RICE LLC**

By:  /s/ Ronald A. Norwood
      Ronald A. Norwood, #33841MO
      Apollo D. Carey, #58286MO
      Justin M. Ladendorf, #68558MO

600 Washington Ave., Suite 2500
St. Louis, Missouri  63101
(314) 444-7759 (Telephone)
(314) 612-7759 (Facsimile)
rnorwood@lewisrice.com
acarey@lewisrice.com
jladendorf@lewisrice.com

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that on the 20th day of April 2018, a true and accurate copy of the foregoing was mailed via pre-paid, first class mail and/or served via the Court's electronic filing system to the following:

| | |
|---|---|
| **Lauren E. Bronson** | **All counsel of record** |
| **Mark I. Bronson** | |
| 2300 West Port Plaza Drive | |
| St. Louis, MO 63146 | |
| lbronson@newmanbronson.com | |
| mbronson@newmanbronson.com | |

            **KING, KREHBIEL, & HELLMICH, LLC**

            _____
            **JASON S. RETTER**