UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STEVEN TAYLOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:18cv00272 SNLJ |
| | ) |
| ST. LOUIS COMMUNITY | ) |
| COLLEGE A.K.A. THE | ) |
| COMMUNITY COLLEGE OF | ) |
| DISTRICT OF ST. LOUIS, ST. | ) |
| LOUIS COUNTY, MISSOURI, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiff brought a ten-count civil rights action against defendant St. Louis Community College ("STLCC" or the "College"), defendant STLCC Board of Trustees vice-chairman Rodney Gee in his individual and official capacity, and defendant campus police officer Robert Caples in his individual capacity. Several counts have been dismissed, and the defendants have moved for summary judgment on the remaining counts (#46, #47).

I.   **Factual Background**

The following facts are undisputed except where indicated. The defendant College operates a community college in St. Louis, Missouri. In the fall of 2017, the College was considering layoffs of full-time faculty and staff members as the result of state budget cuts and declining enrollment. At that time, plaintiff Taylor was an adjunct mathematics

professor who was serving as a representative for unionized College employees. Plaintiff Taylor had been responsible for trying to reach agreement with the College on several issues advocated by adjunct faculty, for example, more frequent payroll intervals, compensation for cancelled classes, pay raises, and seniority rules.

In September 2017, the College's Board of Trustees (the "Board") held a regular meeting. Although the parties quibble over semantics, it appears they agree that the September meeting was fraught with controversy, with numerous students and College employees attending and speaking out against the College's failure to come to an agreement with the union. Defendants state that the public comment portion of the meeting included a great deal of clapping and booing from the audience. Plaintiff denies this. Plaintiff characterizes the clapping as polite and lasting not longer than 10 seconds after each public comment speaker. It is clear from the video recording of the September meeting that there was a lot of clapping, but "booing" is not discernable. Regardless, plaintiff identifies 33 instances of clapping averaging approximately 10 seconds each. Plaintiff notes that the clapping largely occurred while speakers were going to and from the podium. The meeting went late into the night.

The next regular meeting of the Board was on October 19, 2017. The Board's chairperson was absent, so vice chairman defendant Gee assumed the Board Chair's responsibilities. Gee decided to implement a "no-clapping" policy during the public comment section of the meeting to ensure an orderly meeting in light of the large number of people signed up to comment. At the beginning of the meeting, Gee announced some "groundrules." He admonished the audience "to be civil and respectful." He added, "I

2

know we'll have comments from many of you; the disruptive clapping that occurred at the last board meeting will not be tolerated." During the administrative portion of the meeting, however, clapping was allowed. For example, the meeting started with recognition of student, staff, and trustee accomplishments, for which the audience and Board members clapped.

Then, after the first person spoke during the public comment portion of the meeting to address layoffs, the audience clapped, and defendant Gee told the audience that "I'm going to say it for the record again, the applause has to stop." During Gee's admonishment, plaintiff Taylor began walking down the aisle and speaking to the Board, objecting to the "no-clapping rule" being applied now when it was not applied earlier. Gee asked Taylor to leave the room, and Taylor continued to move toward the Board at the front of the room. Gee asked Taylor to leave the room four times, and Officer Caples approached Taylor from behind while Gee asked that "would you please ask him to leave the room and remove him from the room."

Taylor appears to rush forward—or is pushed forward—as Caples touches him from behind. Taylor's sportscoat comes off partially as Taylor continues to move forward, and then as Taylor gets to the front of the room, just in front of the table where the Board sits, Caples wrestles Taylor to the ground and another security officer ran up to assist him.

Taylor acknowledges that although he was not present in the room the first time Gee explained that no clapping would be allowed, he was informed that Gee had instituted the no-clapping rule by telephone as he drove to the meeting.

3

Plaintiff contends defendant Caples grabbed him under the arms and tripped and slammed him into the ground, causing his head to hit the concrete floor face-first. Plaintiff also states that Caples's body was on top of his, and that Caples forcefully thrust his knee between the plaintiff's shoulder blades and wrenched plaintiff's arm to handcuff him. The two other STLCC campus police officers told Caples not to handcuff plaintiff. Plaintiff was assisted from the ground and complied with Caples's orders. Plaintiff was placed in a wrist lock, then Caples and the other police officers took plaintiff to a small empty room where he was confined. Plaintiff was advised he was under arrest for general peace disturbance and resisting arrest. As a result, plaintiff was not able to make his prepared statement during the time he had signed up for at the meeting. Plaintiff also states that two other audience members were removed, who spoke in response to Gee removing plaintiff from the meeting. Plaintiff states Gee told the audience "certainly sitting here and having someone come at me is threatening and traumatizing…the First Amendment doesn't give you the right to be assaulted or to batter."

The following day, October 20, 2017, STLCC released a public statement about the meeting which stated that plaintiff "charged the table where the board members and the chancellor…were seated." Also on October 20, plaintiff was served with a no trespass order. STLCC also sent a letter notifying plaintiff that his employment was suspended and he was recommended for termination due to his conduct at the meeting. The charge of resisting arrest against plaintiff was dismissed.

Plaintiff filed his complaint on February 16, 2018. Plaintiff claims he was severely injured and that his symptoms from those injuries continue to the present. Many

of Taylor's claims have been dismissed, and all that remain are Count I's as-applied "applause rule" claim against defendants STLCC and Gee, and Count III against defendant Caples for excessive force.

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

### III. Discussion

#### A. Count I Against STLCC and GEE

Taylor's First Amendment claim is an as-applied challenge to the no-clapping rule. Plaintiff claims Gee and STLCC restricted speech by prohibiting applause for certain speakers during the meeting. The parties agree that the Board meeting was a limited public forum at which the College may impose restrictions on speech that are reasonable and viewpoint neutral. *Victory Through Jesus Sports Ministry Foundation v. Lee's Summit R-7 School Dist.*, 640 F. 3d 329, 334-35 (8th. Cir. 2011). Plaintiff Taylor contends that the no-applause rule was not viewpoint neutral because it was allegedly selectively enforced against audience members who expressed antagonistic viewpoints toward the College and the Board during the public comment portion of the October Board meeting. Plaintiff emphasizes (1) that Gee did not tell the audience that the no-clapping rule only applied to the public comment part of the meeting, and (2) Gee only enforced the no-clapping rule during the public comment portion of the meeting even though applause was allowed during administrative presentations.

In fact, Gee's "groundrules" announced at two minutes and forty-five seconds into the meeting were that "I know we'll have comments from many of you; the disruptive clapping that occurred at the last board meeting will not be tolerated." This is clearly a reference to the public comment portion of the meeting. Then, the administrative portion of the meeting proceeded, including recognition of college students and other presentations, for which applause was permitted. Thereafter, he announces that they will hear from public commentators who have signed up to speak, and he invites their

6

comments during their assigned speaking time. He stops the applause after the very first public comment speaker. Gee was justified in doing so to ensure an orderly public meeting, regardless of what the public comments actually were. Extended clapping after each of the 29 speakers would certainly prolong the meeting, and Gee's interest in restricting applause was reasonable.

It is also apparent that Gee is entitled to qualified immunity under these circumstances. "[Q]ualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Notably, the qualified immunity doctrine "gives ample room for mistaken judgments but does not protect the plainly incompetent or those who knowingly violate the law." *Ludwig v. Anderson*, 54 F.3d 465, 470 (8th Cir. 1995). The key question is whether the defendant official violated a clearly establish constitutional right. *See Pearson*, 555 U.S. at 822.

"A clearly established right exists when "the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Williams v. Mannis*, 889 F.3d 926, 931 (8th Cir. 2018) (citations and alterations omitted). Whether a right was "clearly established" at the time of its violation depends upon whether "existing precedent [had] placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 735; *see also Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1155 (8th Cir. 2014) (stating that a right "is clearly established if '[t]he contours of the right [were] sufficiently clear that a reasonable official would understand

7

that what he is doing violates that right'") (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).

Plaintiff insists that the no-clapping rule constitutes a prior restraint that was clearly established at the time of the Board meeting. "When the government creates a limited forum for speech, certain restrictions may be necessary; however, the restriction(s) must not discriminate against speech on the basis of viewpoint and it must be reasonable in light of the purpose served by the forum." *Palmore v. City of Pac.*, 851 F. Supp. 2d 1162, 1171 (E.D. Mo. 2010) (citing *Good News Club v. Milford Central School*, 533 U.S. 98, 106–7 (2001)). The Supreme Court explained it this way:

> A government may impose valid time, place, and manner restrictions on protected First Amendment speech, provided that such regulations are "justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information."

*Id.* (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). Thus, the no-applause rule was permissible so long as it was content-neutral, was narrowly tailored to serve a significant governmental interest, and left open ample alternative channels for communication. Those rules are satisfied here. Gee believed that the no-clapping rule applied to all viewpoints; it served the Board's interest in an orderly and efficient public comment session; and Gee explicitly stated that they welcomed public comments from those signed up to speak.

Plaintiff relies on general First Amendment principles, cases involving facial First Amendment challenges, challenges involving non-limited forums, and cases involving

8

unsuccessful First Amendment challenges. *See Saia v. People of State of New York*, 334 U.S. 558 (1948) (holding city ordinance regulating the use of sound amplification devices was "unconstitutional on its face"); *Lovell v. City of Griffin, Ga.*, 303 U.S. 444 (1938) (holding city ordinance regulating the distribution of literature was "invalid on its face"); *Alexander v. United States*, 509 U.S. 544 (1993) (rejecting convicted criminal defendant's First Amendment challenge to RICO's forfeiture provisions); *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377 (4th Cir. 2008) (determining plaintiff was lawfully ejected from county planning commission's public meeting because he became argumentative and disruptive, not because of his viewpoint).

Indeed, in contrast to plaintiff's argument, courts have approved restrictions that were similarly designed to maintain an orderly public meeting. In *Palmore*, 851 F. Supp. 2d at 1173, for example, this Court concluded that a Board rule limiting plaintiff's speaking time at public meeting to five minutes was a reasonable rule that served a significant governmental interest in conserving time and in ensuring that others had an opportunity to speak. And, in *Thornton*, this Court held that guidelines and rules of decorum prohibiting "'foul, abusive or inappropriate language, displays or other materials' while speaking" during public comment portion of city council meeting were "reasonable, viewpoint neutral, and served important governmental interests." *Thornton*, 2008 WL 239575 at *5.

In light of this precedent, it appears to the Court that the no-clapping rule did not infringe upon anyone's First Amendment rights in the context of the limited public forum. However, even if the rule did violate plaintiff's rights, this Court is convinced

9

that Gee is entitled to qualified immunity because plaintiff's right to applause in this limited forum was not clearly established.

This Court need not reach defendants Gee and STLCC's other arguments for summary judgment. Summary judgment will be granted to defendants Gee and STLCC.

### B.     Count III Against Defendant Caples

Plaintiff claims defendant Officer Caples violated plaintiff's Fourth Amendment rights by using excessive force after plaintiff was asked to leave the Board meeting. This Court applies an "objective reasonableness standard when evaluating claims that government agents used excessive force in violation of the Fourth Amendment." *Chambers v. Pennycook*, 641 F.3d 898, 905 (8th Cir. 2011) (internal quotation to *Graham v. Connor*, 480 U.S. 386, 396 (2011) omitted). It is well-established that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 480 U.S. at 396. "An officer's use of force violates the Fourth Amendment when it is objectively unreasonable, given the facts and circumstances of the particular case, as judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Chambers, 641 F.3d at 906 (internal quotations omitted). "The determination whether the force used to effect a seizure was reasonable ultimately requires a case-specific balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 906.

This Court already determined that Caples had probable cause to arrest Taylor because Taylor had become a trespasser by interrupting the meeting and then refusing

10

Gee's multiple requests to leave the room. Plaintiff contends Caples used excessive force when he took plaintiff to the ground, by placing his knee between plaintiff's shoulder blades, and when he applied a transport wrist lock to walk him out of the meeting room.

Defendant Caples explains that he approached plaintiff when Gee told him to escort plaintiff from the room. Caples says he placed his hand on Taylor's left side and that Taylor "quickly and erratically charged toward the Board tables." Caples testified that he assumed Taylor's intentions were "not good" when he pulled away and began charging the Board tables. Caples then took Taylor to the ground just before reaching the Board tables. Caples argues that he is entitled to qualified immunity because, in the context of the lawful arrest he was making, it was not clearly established that the procedures he used (the take down, the knee-in-the-back, and the wrist lock) violated plaintiff's rights.

The Court holds, however, that a genuine dispute of material fact exists here, where plaintiff disputes that any objective police officer could have believed plaintiff was "rushing" the Board tables. Instead, plaintiff contends that Caples actually pushed plaintiff forward to make it appear as though he were rushing the Board tables. Plaintiff provides declarations from individuals who saw what occurred to support plaintiff's assertion:

- Emily Neal, Ph.D., states "the police came at Taylor from behind, grabbed him, and pushed him to the floor."

11

- Sophia Pierroutsakos, Ph.D., Another witness, also a professor at the college, writes that the officer "shove[s] him forward," and Taylor "stumbles and trips forward as they force him down."
- Katharine Johnson writes that "the officer never said anything to Taylor, just pulled on his jacket. Professor Taylor then tried to free his jacket. The officer then put his whole leg in front of Professor Taylor to trip him, from there, Professor Taylor then stumbled forward and the officers took that as Taylor was charging the Board. The officer was holding Professor Taylor's arms behind his back as they all fell forward. Professor Taylor fell right on his head with the officers on top of him."

Other witnesses also support plaintiff's version of the events.

The video recording of the event—which is taken a few rows behind where Taylor is first approached by Caples—is inconclusive. It is clear that defendant Caples attempts to grab plaintiff's sportscoat and that plaintiff is either pushed or moves forward. This Court must resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co.*, 541 F.2d at 210. After a careful review of the video, and although it is a close call, this Court the Court cannot determine as a matter of law that defendant Caples was objectively reasonable in his use of force. Summary judgment will be denied to defendant Caples.

Accordingly,

**IT IS HEREBY ORDERED** that defendants STLCC and Rodney Gee's motion for summary judgment (#46) is GRANTED.

**IT IS FURTHER ORDERED** defendant Robert Caples's motion for summary judgment (#47) is DENIED.

Dated this __5th__ day of March, 2020.

                                            STEPHEN N. LIMBAUGH, JR.
                                            UNITED STATES DISTRICT JUDGE